STATE v. HUFF.

(Filed December 17, 1904).

1. ASSAULT WITH INTENT TO COMMIT RAPE—*Evidence.*

In a prosecution for an assault with the intent to commit rape, two witnesses having testified to certain facts, it is competent to show what they said to each other relative to the alleged assault at the time of the commission thereof.

2. ASSAULT WITH INTENT TO COMMIT RAPE—*Evidence.*

In a prosecution for an assault with intent to commit rape, evidence that a witness near by called to the prosecutrix at the time of the alleged assault is competent as showing that the prosecutrix knew the witness was near.

INDICTMENT against George T. Huff, heard by *Judge G. S. Ferguson* and a jury, at July Term, 1904, of the Superior Court of WAKE County.

The defendant was indicted for an assault with intent to commit rape, and convicted by the jury of a simple assault. So much of the testimony as is necessary to present the exceptions is as follows:

Mrs. Jones, the prosecutrix, testified that she lived at Fuquay Springs; that defendant came to her house about dark on the day of the alleged assault; that she was sitting in the door. She first thought it was her husband, and then thought it was Alex. Hobbs. He came up and said "Good evening," and she said "Good evening." He asked for her

husband, and she told him he was in the store. Defendant said he was not; came and put his foot on the door-step and said that Mr. Jones had gone to Chalybeate to arrest a man and would not return until 12 o'clock, and he had come to stay until he came back. "He told my little girl to hand him a match; he wanted to light a cigar. While she was gone the defendant took her by the hand and said "Let us go to bed." Witness said "You must be crazy; you leave here." Witness prepared supper, and while she and the children were eating the defendant came back; she saw him when he jumped up in the door. Mr. Arnold's dog was under the house and barked. He told the dog to "hush"; said he would kill it; put his hand in his pocket when he said that. Witness was sitting feeding the baby—the table in front of her and the baby in her lap on her left arm. Defendant took hold of her by the hand; he pulled up a chair and sat down by her and put his hand in her bosom. She pushed it away and he put it back again and tried to put his hands under her clothes and she pushed them away; could not push him away because he was stronger than the witness. He was there ten or fifteen minutes. Witness saw her husband coming and told the defendant. She made no outcry because the defendant tried to shoot the dog and she was afraid that he would shoot her. When she saw her husband coming she told defendant she would tell him and he would kill defendant. He begged her not to tell him; he got up and sat down on the step. Defendant asked her husband to go to the store; that he wanted to buy something. They went to the store in a few minutes. Witness told her husband what defendant had done when he first came back from the store. Witness was asked in regard to her relations with a man in Florida and other men, all of which she denied.

Defendant testified that he went to Jones' house to get him to go to the store to get a bundle, and he asked Mrs. Jones if

STATE *v.* HUFF.

her husband was at home and she said "No." He asked her if he had gone to the store and she said "No." She asked defendant to have a seat; that Mr. Jones would be back in a few minutes. She was sitting in the door, on the door-step. Defendant put his foot on the door-step and stood there. She took hold of his hand and said "she never expected to see him sunburned as badly as that." While holding his hand she leaned over, and his hand might have touched her bosom. She made him a proposition; told him to go out fifteen or twenty minutes, until she could lay the baby down, and she would come and meet him. Witness went down to the branch and waited a few minutes. He returned to the house and asked her why she did not come. She said "Wait awhile"; that she could not get the baby asleep. She said "Come back another time," and not to go anywhere else. Witness never offered to force her or take any liberties with her except what she invited. She said that she had been wanting to meet witness for some time, and asked him if he got the word she sent him. Witness never went into the house, and he was not under the influence of liquor.

The defendant introduced Benjamin Arnold, who testified that he lived at Fuquay Springs, sixty or sixty-five feet from the house of the prosecutrix; there was no obstruction between the two houses; he could see all that passed between defendant and Mrs. Jones. He was at home, sitting on the door-step with his wife. Defendant was standing on the ground with one foot on the door-step, and Mrs. Jones sat in the door; could not hear what they said; they were talking in low tones; he told her good evening and left; went to the branch. Some time after he came back and sat in the door, and the witness got his banjo and sat in his door, then went to bed. Before defendant went off the first time, and while he was standing with his foot on the steps, witness called Mrs. Jones and asked her where her husband was; called pretty

loud, but she did not answer.  Defendant asked witness to give his reason for calling Mrs. Jones, and the State objected; objection sustained and defendant excepted.  Witness said that he saw nothing that looked like an assault; could have seen it, as it was bright moonlight and there was no obstruction; that he and his wife were talking, and that Mrs. Jones could have heard the conversation if she had listened.  Defendant offered to prove by the witness the conversation between him and his wife with reference to what they saw and what they did in consequence thereof.  Witness stated that he was going to call Mrs. Jones to keep her from doing wrong; that he called twice, and his wife told him to hush, that it was none of his business, and that in consequence of what he saw he got his banjo and sat in his door, but retired soon after, at his wife's request.  This testimony, upon objection by the State, was ruled out, and defendant excepted.

Mrs. Arnold was introduced and testified the same as her husband.  Defendant asked the witness: "In consequence of what you and your husband saw between defendant and Mrs. Jones, what did you and your husband do?"  Objected to and ruled out; defendant excepted.  This was for the purpose of showing that the witness and her husband knew that an assignation was being made and that they tried to stop it; that witness prevented her husband from interfering.

From a judgment upon a verdict of guilty the defendant appealed.

*Attorney-General Gilmer,* for the State.
*B. C. Beckwith,* for the defendant.

CONNOR, J., after stating the case.  We think that the testimony was competent and should have been admitted.  The theory of the defense was that the prosecutrix consented to all that was done by the defendant; that from this point of view,

and for the purpose of contradicting the prosecutrix and corroborating the defendant's testimony, the evidence of Arnold and his wife was relevant and very material. If believed by the jury it fully sustained the defendant's view of the transaction. For the purpose of corroborating each other, it was clearly competent for them to testify as to what they said to each other at the time, and what they did. They were sixty-five feet from the prosecutrix and the defendant. The relations between the families were friendly. The fact that the witness called twice to Mrs. Jones in a loud voice sixty-five feet away was clearly competent as tending to show that she was aware that Arnold was sufficiently near to render her assistance if the defendant was committing an assault upon her.

It is well settled that a witness who is either impeached or whose testimony is called in question by the mode of cross-examination or by contradictory testimony may, for the purpose of sustaining his credibility, testify to statements made by him in respect to the matter about which he testifies at or immediately after the alleged transaction. It was material in this case on the part of the defense to show that Mrs. Jones knew of the presence of Arnold and his wife at their home sufficiently near by to enable her to call for help if assaulted. When they testified that they were sitting in the door, where they could see the entire transaction, and that for the purpose of calling Mrs. Jones' attention to their presence Arnold called her twice, it is competent to show the state of his mind as explaining his conduct. We think that what he said to his wife at the moment, and what she said to him in respect to the very matter in issue, was competent for the purpose for which it was offered. It would certainly have put the witness in a very unenviable position to have shown that he was within sixty-five feet of his neighbor's wife, who was being assaulted, and saw the transaction and made no effort to rescue

her. The only explanation of such conduct consistent with that of an honorable man, whose testimony was entitled to credit before the jury, was that he thought the defendant's conduct was not objectionable to her. It was competent to show, as explaining his conduct, what his wife said to him at the moment.

There was much other testimony tending to impeach the prosecutrix. We do not deem it necessary to pass upon the many other exceptions, as they may not arise upon another trial. The rejection of the evidence offered by the defendant entitles him to a

New Trial.